## The State vs. Elias Fort.

### Habeas Corpus.

The Justices of the Inferior Court are not liable to the performance of militia duty.

And it *seems*, that such duty cannot be required from the officers of the Judiciary Department as organized by the Constitution.

### By DAVIES, Judge.

FROM the return made by the officer to this writ of habeas corpus, it appears, that the prisoner has been arrested under a warrant issued by the Colonel of the first regiment of Georgia Militia, for a fine imposed by a Court of Inquiry, for neglecting to attend a regimental parade. The defendant is one of the Justices of the Inferior Court of the county of Chatham, and contends that he is not liable to perform militia duty. The question presented for the decision of the Court, is, whether the Justices of the Inferior Court can be required to perform such duty.

The Constitution of the United States gives to Congress the power to provide for organizing, arming and disciplining the militia, and an Act was passed in May, 1792, for carrying this power into effect, the first section of which provides, that each and every free able-bodied white male citizen of the respective States resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five, except as hereinafter excepted, shall severally and respectively be enrolled in the militia. The exceptions referred to, embrace a variety of persons and officers, together with all persons who were, or might thereafter be exempted by the laws of the respective States, from militia duty. Under this exemption must be included, as well those persons who were exempted by the statute laws of the several States, as those who were exempted by the common law in those States,

Where the common law had been adopted.   In December, 1792, an Act was passed by the Legislature of this State, to revise and amend the militia laws, and to adapt the same to the Act of Congress of May, 1792, the 23d section of which enumerates a variety of exemptions, some of which were among the exemptions provided for by the common law, and others which were not. In December, 1792, another Act was passed supplementary to that of 1792, the 15th section of which, repeals so much of the former Act, as exempts from duty the several officers therein named, and all laws regulating the militia, passed prior thereto. It is contended, that the effect of this repealing clause was to destroy all the exemptions provided for by the Act of 1792, and from that only, and that the effect of this repeal was to render all those liable to the duty who had been exempted thereby.   This is, I think, very doubtful.   The 15th section of the Act of 1793, does not repeal the 32d section of the Act of 1792, in terms, but only repeals so much of the Act of 1792 as exempts the several officers therein named.   Now these exceptions include persons who cannot be called officers, in the technical or in the literal sense of the term.   It may, I think, be doubted whether the Legislature ever intended to designate as officers, either Legislative, Judicial or Executive, Ministers in orders, Practitioners of Physic, Public Printers, Ferrymen, Millers, Tutors and Students, Invalids, Post-riders, Madmen and Idiots.   And the Legislature have themselves shewn that they made a distinction between the heads of departments and its officers, for they exempt members of the Legislature and their officers.   If therefore, a strict construction were given to the repealing clause of the Act of 1793, it might follow, that many of the least important exemptions of the Act of 1792 were left, whilst those were taken away which would seem to be necessary in the very nature of things.   In the exemptions of the Act of 1792, were included Madmen and Idiots, but if the construction contended for were to be adopted, they are now lia-

Part i.—J. 2.

ble to do militia duty; and this, I think, would hardly comport with the good sense and wisdom of the Legislature of our State. I make these remarks, to shew how difficult it is to determine, whether the Legislature by the repealing clause of the Act of 1793, intended to leave all exemptions from duty, to stand upon the principles of the common law, limited or modified in such a manner, as would best adapt them to the state and condition of the country, and the form of our government; or, whether they intended to take away all exemptions, except those mentioned in the Act of 1792. The first supposition, I am aware, is liable to many objections, but the latter is so totally irreconcilable with good policy and sound Legislation, that I could not but adopt the former, and reject the latter. It may be said, that the Legislature themselves have shewn, that they intended by the repealing clause of the Act of 1792, to include under the description of officers all the exemptions contained in the Act of 1792, because by the 7th section of the Act of 1795, (*M. & C.* 568,) Ministers in orders are exempted, which shews that between 1793 and 1795, they were considered liable to militia duty. But this only shews what the Legislature of 1795 supposed was the intention of their predecessors of 1793, of which in fact they had as little means of information as we have, and about which they were as liable to err. On the other hand, by the Act of 1794, (*M. & C.* 153,) in addition to the members of the Fire Company, the Recorder and City Treasurer of Savannah, the Marshal, Messenger, and Clerk of Council are exempted. It may be asked if the Legislature ever intended to subject the judiciary department of the government to militia duty, whilst the inferior officers of a corporation were exempted. And by the Act of 1798, (*M. & C.* 682,) all persons engaged in carrying on iron works in the State are exempted. If we are, therefore, to be governed by the intention of the Legislature, by a reference to these various Acts of the assembly, it seems to me that it would be difficult to arrive at any satisfactory conclusion, or one that might not be opposed on some plausible ground. But

the Act of 1818, (*Prince*, 324,) repeals all former Acts upon the subject of the organization of the militia, and the 43d section exempts all persons who are exempted by the laws of the United States, and all Clergymen regularly ordained. The question under consideration must therefore be decided with reference to this Act. It is admitted that by the common law all judicial officers are privileged from militia duty; and it must be admitted also, as a general principle, that the Legislature may at its pleasure abridge or extend this privilege, with reference to the persons who may claim it; and whenever the will of the Legislature can be ascertained, either from positive and express enactments, or by necessary inference, I will most cheerfully yield obedience, so far as I may, consistently with my duties and obligations. In the case of *Bliss*, (9 *John.* 347,) in which the question was whether *Bliss*, who was an attorney and counsellor of the Courts of New York, was privileged from serving in the militia, it was decided that he was not exempt. The law of the State of New York contained a number of exemptions, including the Lieut. Governor, the members of both houses of the Legislature and their respective officers, the Chancellor, the Chief and other Justices of the Supreme Court, Judge of the Court of Probate, and all other judicial officers of the State. Upon the maxim that the expression of one person is the exclusion of others, it was held that attorneys who were ministerial officers of the Courts, were liable to do duty in the militia. And it seems to me to have been a correct construction of the law. But our Act contains the single exemption of Ministers of the Gospel. If, by extending the privilege to other persons, the manifest intention of the Legislature would be violated, or if by such construction the law would be rendered useless, I should be among the last to adopt such a construction; but if on the other hand the intention of the Legislature be doubtful and ambiguous: and if the construction contended for, would necessarily or probably involve a violation of principles, essential to the well-being of the community, the good

order of society, and interfere materially with the proper discharge of the duties of the officers of one of the distinct and independent departments of the government, then, I should by adopting such a construction, do an act of injustice to the wisdom and patriotism of the framers of our laws, and I am bound from respect to them, to reject it.　The Constitution declares that the Legislative, Executive and Judiciary departments of the government shall be distinct, and that each department shall be confined to a separate body of magistracy.　It follows that within the sphere of action prescribed to them by the Constitution, each department must be independent, because if they were not, some one of them might be destroyed by the other, or its operations so restrained and limited as to deprive it of the proper exercise of those powers which are delegated to it by the Constitution.　The Inferior Court is an important branch of the judiciary, deriving its jurisdiction immediately from the Constitution.　It has concurrent jurisdiction with the Superior Court in all civil actions, not involving the title to real estate.　The Justices of that Court are *ex officio* Judges of the Court of Ordinary, exercising original jurisdiction in all cases usually confided to such Courts.　The Justices, in the absence of the Judge of the Superior Court, are authorized and required to issue writs of *habeas corpus*, and in all cases to discharge, admit to bail, or remand a prisoner, besides many other duties which are imposed upon them by various Acts of the Legislature.　It must be obvious, that the important duties of this office are incompatible with those, to which individuals enrolled in the militia are subjected, according to the provisions of the law now in force, and allowing to those who are authorized and required to enforce its various provisions, the utmost prudence and discretion in the exercise of those powers.　But it is the principle which is contended for that is objectionable, and not the manner in which that principle has been applied.　If the Legislature can require of the Judges of the Courts, that they should perform five days duty in each year, as militia men, they might require any greater service that they pleased, and if they can impose a fine

of five dollars for neglecting to perform this duty, they might impose any larger sum, and thus the duties of the Judge might be rendered so totally incompatible with the services of the soldier, that the one could not be discharged without a total neglect of the other. The eulogiums passed upon a well regulated militia force by one of the counsel, are by no means exaggerated, or extravagant. The militia is the bulwark and the best safeguard of our country; but without an independent judiciary, our government could not long be preserved, and without it, there would be little left which the citizen soldier should be proud of, or the soldier citizen should feel a desire to protect. The doctrine contended for by the counsel in this case, extends as well to the Judges of the one Court as of the other; to the Judges of the Superior, as well as to the Justices of the Inferior Courts. It seems to me, that the evil resulting from withdrawing from the effective force of the militia, the services of the Judges of the Courts, will be amply compensated by the advantages of having justice regularly administered, as well to the soldier as the citizen. But it is said, that the services required of militia men are not personal but pecuniary. If this were the case, the argument founded upon the importance and necessity of augmenting the militia force, even by drafts from the bench, loses much of its weight, since, as I believe, the fines imposed are not appropriated to the filling up of the ranks, but to the purchase of colors and procuring music. I consider it a personal service. The object of the Legislature is, by previous training to qualify every man enrolled in the militia, to perform the duties of a soldier when called into actual service. The payment of the fine does not relieve the delinquent from future services, but is a punishment for past neglect, and the means of inducing personal attendance for the future. Besides, when enrolled, the Judges of the Superior, or Justices of the Inferior Court, can claim no privileges beyond other men whose names are placed on the muster roll; they must be liable to a draft when any portion of the militia is to be called into service; and if drafted, and they refuse or neglect to appear, they are by the 19th section of the Act to

be considered as deserters, and are subjected to the rules and articles of war ; but in the case of privates they are allowed to procure substitutes ; no commutation of money for personal services is allowed.  It might frequently happen that a substitute could not be procured, or that the person drafted is unable to afford a sufficient sum of money to procure one.  The consequence resulting from such a state of things must be obvious to every one.  Upon the whole, and after the best investigation which I am enabled to give to the subject, I am constrained to believe that the Legislature was disposed to leave the subject of exemptions to be regulated by those rules and principles, which were of force before the passage of the Act of 1792, so far as they were applicable to the condition of the country and our system of government.  I am not disposed to consider this question with reference exclusively to the common law principle, which is applicable to such questions—but to consider it, with reference to those principles which grow out of the existing state of things, and the form and structure of our government, and the order and arrangement of its various departments.  Without law, no government can exist, and unless the laws are regularly administered, they become a mere mockery and inefficient for the purposes for which they were designed.  Subject those officers to whom the Constitution has given the power, and upon whom it has imposed the duty of expounding and administering the laws to the performance of militia duty, and you prostrate and render dependent one of the departments of the government, and deprive the citizens of that security for their lives and property, which it should be the object of every government to secure to them, and in no government in a more eminent degree, than that under which it is our happiness, and should be our pride to live.

The defendant is therefore discharged.

M. MYERS & ED. HARDEN, for the State—E. FORT, *pro. per.* contra.